UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12-bk-14853 |
| | ) | |
| LaVergne Briggs, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

## MEMORANDUM DECISION

TIMOTHY A. BARNES, Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in the Northern District of Illinois. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (G).

## PROCEDURAL HISTORY

The matter before the court is the Motion for Relief from Stay and Motion To Dismiss (the "Motion") [Docket No. 31] of BG Chicago Realty, LLC ("the Movant"). In considering the Motion, the Court has considered the arguments of the parties at the July 30, 2012 hearing and the August 13, 2012 evidentiary hearing, and has reviewed and considered the Motion itself and the Response to Motion To Dismiss; Motion for Relief from Stay and for Other Relief (the "Response") filed on behalf of the debtor, LaVergne Briggs (the "Debtor") [Docket No. 36]. In reviewing each of the foregoing, the Court has reviewed the various attached exhibits submitted in conjunction therewith and has considered the testimony evinced at the August 13, 2012 hearing, and the exhibits submitted by the parties into evidence at the same hearing.

## FACTUAL HISTORY

From the foregoing review and consideration, the court finds the following facts to be undisputed:

(1) The property around which this dispute centers is the property commonly known as 1365-57 River Drive, Calumet City, Cook County, Illinois (the "Property");

(2) Legal title to the Property is held pursuant to that certain Trust Agreement dated January 29, 2004 and known as Trust No. 132323 (the "Trust");

(3) The Debtor and her brother, Dorian Principal, are the co-beneficiaries of the Trust;

(4) The Debtor and her brother, Dorian Principal, are co-obligors on a financial obligation incurred by and between the Debtor and her brother, as borrowers, and ShoreBank, as lender, which obligation is memorialized by, among other things, a

1

  certain Mortgage, Promissory Note and Assignment of Rents, each dated February 6, 2004;

(5) The principal amount of the foregoing obligation at the time it was incurred was $340,000.00;

(6) The Movant is the legal successor to the rights and obligations of ShoreBank with respect to the foregoing obligation;

(7) Less than one year after the acquisition of the Property and the incurrence of the foregoing obligation, on January 14, 2005, Dorian Principal commenced an individual bankruptcy under Chapter 13 of the United States Bankruptcy Code, Case No. 05-01227;

(8) Dorian Principal's Chapter 13 case was dismissed on motion of the United States Trustee and by order of the court on February 18, 2005 and closed on April 28, 2005;

(9) Between January 14, 2005 and the date of the evidentiary hearing in the instant case, a total of ten individual bankruptcy petitions scheduling the Property – each by either the Debtor or Dorian Principal – have been filed;

(10) In between the foregoing cases, the Movant and the Movant's predecessors have made various attempts to exercise their state remedies with respect to defaults on the obligations owed by the Debtor and Dorian Principal;

(11) In every instance, including the case at bar, a bankruptcy case ultimately intervened to prevent the Movant or the Movant's predecessors from proceeding;

(12) Such filings were generally timed to precede a state court foreclosure action or the appointment of a receiver in accordance with state law;

(13) The Debtor and Dorian Principal are in default on the obligation, and such default has existed since May, 2008;

(14) In the above-captioned case, the Debtor has been using the products and proceeds of the Property without the consent of the Movant;

(15) The Debtor has not obtained court approval for such use; and

(16) As was the reason for dismissal in many of the past cases, the Debtor is currently in default on plan payments.

## DISCUSSION

The initial question presented to the court is whether cause exists under 11 U.S.C. § 362(d)(1) or (2) to grant the Movant relief from the automatic stay imposed by the filing of the

above-captioned case and the application of 11 U.S.C. § 362(a).[1] The secondary question presented to the court is whether the facts exist pursuant to which *in rem* relief may be afforded pursuant to 11 U.S.C. § 362(d)(4). For the reasons more clearly stated below, the court answers both questions in the affirmative.

I.     RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d)

The decision to modify the automatic stay pursuant to 11 U.S.C. § 362(d) is committed to the sound discretion of the bankruptcy court. *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995); *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985); *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir. 1982).

Section 362(d) states, in pertinent part, that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest….

11 U.S.C. § 362(d). Adequate protection may be provided through cash payments, replacement liens, or some other relief though which the creditor realizes the "indubitable equivalence" of its interest in a debtor's property. 11 U.S.C. § 361.

As with any other request of the court, the party making the request has the initial burden of producing evidence sufficient to establish a *prima facie* case of entitlement. In the case of relief under section 362(d), once that the Movant has established a *prima facie* case, the burden of proof is as set forth in 11 U.S.C. § 362(g). Under section 362(g), as the party requesting relief from the stay, the Movant bears the burden on the issue of the Debtor's equity in the Property. *See* 11 U.S.C. § 362(g)(1); *see also Fed. Nat'l Mortg. Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 208 (N.D. Ill. 1993); *In re Standfield*, 152 B.R. 528, 534 (Bankr. N.D. Ill. 1993). The Debtor, as the party opposing such relief, has the burden of proof on all other issues. *See* 11 U.S.C. § 362(g)(2); *see also Fed. Nat'l Mortg.*, 153 B.R. at 208; *Standfield*, 152 B.R. at 534.

The Movant has clearly established cause for relief from stay under 11 U.S.C. § 362(d)(1). *See C & S Grain Co.*, 47 F.3d at 238 ("a court may grant a party relief from the stay if it finds that the moving party's interest in the property can be better protected or for any other cause the court finds to be worthy.").

Among the factors the court may consider as cause for relief from stay is a debtor's good or bad faith in commencing the bankruptcy case. *In re Milne*. 185 B.R. 280, 283 (N.D. Ill. 1995). A

---

[1]     The Movant and the Debtor have concentrated their arguments on the relief from stay aspects of the Motion and <u>not</u> on the request for dismissal. Because the dismissal was requested by the Movant in the alternative and because the court, as set forth herein, has granted the Movant's request for relief from stay, the court deems the Movant's dismissal request moot and does not consider it here.

3

determination of bad faith involves a number of factors, any one of which may be persuasive. *In re Grieshop*, 63 B.R. 657, 662-63 (N.D. Ind. 1986); *see also In re Kerns*, 111 B.R. 777 (S.D. Ind. 1990). Such factors include, among others, previous bankruptcy petitions by the debtor or a related entity, that the bankruptcy petition allows the debtor to evade pre-petition court orders, that the petition was filed on the eve of a foreclosure, that there are few debts other than those owed to moving creditor(s), and that the debtor filed the bankruptcy petition solely to create the automatic stay. *Grieshop*, 63 B.R. at 663; *see also In re Henderson*, 395 B.R. 893, 902 (Bankr. D.S.C. 2008). The Movant has established that virtually every one of these factors exists.

In addition, the Movant has established other causes including that: (a) the obligation has been in default for an inordinate amount time, *see In re Senior Care Properties, Inc.*, 137 B.R. 527, 529 (Bankr. N.D. Fla. 1992) (inordinate delay in paying creditor constitutes cause); (b) that the Debtor has failed to pay the taxes related the Property, *see In re James River Associates*, 148 B.R. 790 (E.D. Va. 1992) (failure to pay taxes on collateral constitutes cause); *In re Waynesboro Hotel Co., Inc.*, 19 B.R. 561 (Bankr. M.D. Pa. 1982) (same); (c) that the Movant has had to maintain the insurance on the property despite the Debtor's obligation to do so, *see In re Food Barn Stores, Inc.*, 159 B.R. 264 (Bankr. W.D. Mo. 1993) (failure to maintain insurance constitutes cause); (d) that there have been strategic filings by multiple entities to protect a common asset, *Henderson*, 395 B.R. at 902 (citing to *In re Hartley*, 187 B.R. 506, 507 (Bankr. D.S.C. 1995)).

Even if the Movant's sole cause for relief from stay was lack of adequate protection, the Debtor has not provided any evidence as to the protection afforded the Movant other than the Debtor's plan payments to the Chapter 13 Trustee, including a series of late payments made on the date of the evidentiary hearing. In addition to admitting, both in the Response and in the testimony evinced at the evidentiary hearing, that the obligation has been in continuous default since May, 2008, the Debtor has admitted to using the Movant's cash collateral -- the products and proceeds of the Property -- without consent or court order.

For the foregoing reason, the court finds that the Movant has established grounds for relief from stay under 11 U.S.C. § 362(d)(1).

II.    *IN REM* RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d)(4)

The 2005 amendments to the Bankruptcy Code added section 362(d)(4), which provides bankruptcy judges with statutory authority to grant *in rem* relief from the automatic stay. *See In re Montalvo*, 416 B.R. 381, 386 (Bankr. E.D.N.Y. 2009).

Under section 362(d)(4), the court does not actually order *in rem* relief as to real property. Rather, if the court finds the elements of section 362(d)(4) are met in relation to a particular property, the order containing that finding must be recorded "in compliance with applicable State laws governing notices of interests or liens in real property," 11 U.S.C. § 362(d)(4), and thereafter, by operation of section 362(d)(4), *in rem* relief is applicable to the real property. Absent further order of the court, no bankruptcy filing pertaining to the property commenced with the two years following the recording of the order will result in an automatic stay applicable to the property under section 362. *Id.*; *see also Montalvo*, 416 B.R. at 386; *In re Ness*, 399 B.R. 897, 902 (Bankr. E.D. Cal. 2009); *In re Poissant*, 405 B.R. 267, 273 (Bankr. N.D. Ohio 2009).

Section 362(d)(4) requires that two elements be established: (a) that the debtor engaged in a scheme to delay, hinder or defraud creditors, and (b) that the scheme involved either the transfer of property without the consent of a secured creditor or court approval, or multiple bankruptcy filings.

Here, there is no question that there were multiple bankruptcy filings. As noted above, between January 14, 2005 and the date of the evidentiary hearing, there were ten bankruptcy filings that involved the Property by either the Debtor or her brother, Dorian Principal. By the court's count, this period consists of 3,088 days. During that period of time, after eliminating the days where more than one bankruptcy case overlapped, the Property was subject to a pending bankruptcy for 2,130 days. This means that for seven years, roughly 2/3s of the time was spent with a pending bankruptcy and stay with respect to this Property.

There is also no real question that the multiple bankruptcies hindered and delayed the Movant's attempts to exercise its rights with respect to the Property.

The Debtor in this regard spends a fair amount of time seeking to establish that no fraud exists in the present set of circumstances, but the Debtor has failed to rebut the Movant's contention that it has been hindered or delayed the creditor. The Debtor's efforts are in response to the Movant's reliance on Judge Schmetterer's opinion in *Wilke*, where Judge Schmetterer devotes a fair amount of discussion to the question of whether fraud existed. *In re Wilke*, 429 B.R. 916, 922 (Bankr. N.D. Ill. 2010). This is, however, a red herring. *Wilke* was issued in June of 2010, when section 362(d)(4) required a finding of the court that the scheme was to delay, hinder **and** defraud creditors. Thus an inquiry into fraud was required for a finding under section 362(d)(4).

The Bankruptcy Technical Corrections Act of 2010, Public Law 111-327, H.R. 6198 (signed into law on December 22, 2010, after the date Judge Schmetterer's *Wilke* opinion was released), however, changed this test to a finding in the alternative; that the scheme was to delay, hinder **or** defraud creditors. As noted by one court, "a scheme to defraud differs from a scheme to hinder and delay." *In re Gonzalez*, 456 B.R. 429. 442 (Bankr. C.D. Cal. 2011). Thus the court need not inquire into fraud if it finds there was hindrance or delay to the Movant. Here, the facts before the court make clear that each of the Movant's attempt to realize upon its rights in state court was met with a bankruptcy filing. The hindrance and delay to the Movant is clear on its face.

Thus the only real question presented to the court is whether the Debtor's actions constitute a scheme. "A 'scheme,' for purposes of 362(d)(4), 'is an intentional artful plot or plan to delay, hinder [and] defraud creditors.' *In re Duncan & Forbes Dev., Inc.* ,368 B.R. 27, 32 (Bankr. C.D. Cal. 2006); *see also* Black's Law Dictionary 1372 (8th ed. 2004) ('An artful plot or plan, usu. to deceive others.')." *In re Wilke*, 429 B.R. at 922.

It is this court's opinion that a determination of whether or not a scheme exists will almost always have to be one of extrapolation. No debtor is expected to admit to having conducted a scheme. Rather, the court must attempt to deduce a scheme from the facts. Other courts that have grappled with this task have shed some light on the factors to consider, as follows:

In *In re Procel*, the district court affirmed a bankruptcy court's granting of *in rem* relief predicated on, among other things, numerous bankruptcy filings by the debtor and the debtor's brother, each of which case was procedurally dismissed shortly thereafter. 467 B.R. 297, 309 (S.D.N.Y. 2012). In the case at bar, the court took notice at the evidentiary hearing of each of the

5

proceeding cases, and in so doing, took notice of their resolution. Each of the nine preceding cases in question here was dismissed prior to a discharge having been earned. The majority of the preceding cases were dismissed without having even achieved plan confirmation.

In *In re Macaulay*, the bankruptcy court paraphrased an earlier, pre-BAPCPA case, stating that it "considers four circumstances in determining whether a Debtor acted in bad faith to warrant *in rem* relief: '1) strategic filing of bankruptcy petitions to prevent collection; 2) multiple petitions by multiple parties to protect common property; 3) lack of evidence of changed circumstances between filings; and 4) inability to fund a plan.'" 2012 WL 2919154 at *3, Case No. No. 11–07382 (Bankr. D.S.C. July 16, 2012) (paraphrasing, but not citing *In re Price*, 304 B.R. 769, 774 (Bankr. N.D. Ohio 2004)). Here, the first three factors clearly exist.

In *In re Young*, the bankruptcy court addressed what constitutes a scheme, and concluded that the plain meaning of the term shall govern. 2007 WL 128280 at *9 (Bankr. S.D. Tex. 2007) (citing to *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) as to the plain meaning approach to statutory interpretation). For such plain meaning, the court considered Webster's Dictionary's definition: "A 'scheme' is 'a plan or program of action.'" *Id.* Using such definition, the court in *Young* considered the totality of the circumstances, and concluded that seven bankruptcies by family members or entities controlled by them, each of which pertained to the property in question and each of which was ultimately dismissed, was sufficient evidence that the entities were involved in a scheme.

Last, in *In re Abdul Muhaimin*, the bankruptcy court concentrated on the timing of the multiple filings by related parties, concluding that together such circumstances constituted evidence of a scheme. 343 B.R. 159, 170 (Bankr. D. Md. 2006).

As to the inquiries in *Young* and *Muhaimin*, as with each of the foregoing inquiries, the court finds that the evidence before it establishes that there was in fact a scheme in place between the Debtor and Dorian Principal with respect to this Property. Among other things:

(1) There have been ten total bankruptcies in seven years relating to the Property;

(2) The bankruptcies were commenced by either the Debtor or her brother, Dorian Principal, related parties;

(3) The most recent bankruptcies were strategically-timed such that they were filed within ten days of a potentially adverse state action with respect to the Property (and in one case, on the day of);

(4) The timing of the bankruptcy filings appears to be such that, for the most part, overlap is minimized between the two debtors, thus maximizing the time the Property is subject to a stay;

(5) There has been no evidence of a change in circumstances necessitating the filings; and

(6) Every one of the filings was dismissed for failure to comply with the requirements of the Bankruptcy Code in some fashion (*e.g.*, in the Debtor's last case, the Chapter 13 Trustee filed no less than five motions to dismiss the case for various failures).

    The Debtor, of course, denies that a scheme exists, and invites the court to look at various indicia that the above-captioned case is filed in good faith. This is, at its essence, an invitation to look closely at one tree and conclude there is a tree, not a forest. A scheme, on the other hand, is more precisely the forest than the tree. When looking at the totality of the circumstances – the forest, if you will – the court has no hesitation in finding that a scheme sufficient to meet the standards of section 362(d)(4) exists.

## CONCLUSION

    For the foregoing reasons, the court concludes that the standards have been met to grant the Movant relief from stay pursuant to 11 U.S.C. § 362(d)(1). It is further found and held that the filing of the Debtor's petition was part of a scheme to delay or hinder the Movant, which scheme involved multiple bankruptcy filings. Grounds therefore exists for the court to grant relief from the stay pursuant to 11 U.S.C. § 362(d)(4), and that upon the Movant's compliance with the statutory requirements of 11 U.S.C. § 362(d)(4), for such modification to act as an *in rem* relief with respect to the Property for two years from the date hereof.

    A separate order will be issued, concurrent with this Memorandum Decision, granting the Movant relief from the automatic stay of 11 U.S.C. § 362(a), including as to the *in rem* relief described above.

Dated: August 30, 2012

Hon. Timothy A. Barnes
United States Bankruptcy Judge

7